UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARSHALL DYSON, individually and as a representative of the class, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-3155-B |
| SKY CHEFS, INC., d/b/a LSG SKY CHEFS and LSG SKY CHEFS NORTH AMERICA SOLUTIONS, INC., d/b/a LSG SKY CHEFS, | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Due to Lack of Article III Standing, or in the alternative, Motion for Judgment on the Pleadings. Doc. 49. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

### I.

### BACKGROUND

This is a Fair Credit Reporting Act (FCRA) case. In December 2015, Plaintiff applied to work for Defendants as a cook. Doc. 1, Pl.'s Compl. ¶ 20. As part of the employment application process, Defendants provided applicants with the following Disclosure and Authorization Form:

**NOTICE TO HIRERIGHT CLIENT:** These sample documents should NOT be construed as legal advice, guidance or counsel. Employers should consult their own attorney about their compliance responsibilities under the FCRA and applicable state law. HireRight expressly disclaims any warranties or responsibility or damages associated with or arising out of these documents and the information provided therein. Employers seeking credit reports or criminal history information may be required to provide additional notices pursuant to state or local law, as applicable.

[COMPANY LETTERHEAD]

## OTHER DISCLOSURES, ACKNOWLEDGMENTS & AUTHORIZATIONS REGARDING BACKGROUND INVESTIGATION FOR EMPLOYMENT PURPOSES

### Disclosures

*Investigative Consumer Report:*

LSG Skychef _____ (the "Company") may request an investigative consumer report about you from HireRight, Inc. ("HireRight"), a consumer reporting agency, in connection with your employment or application for employment (including independent contractor or volunteer assignments, as applicable). An "investigative consumer report" is a background report that includes information from personal interviews (except in California, where that term includes background reports with or without information obtained from personal interviews), the most common form of which is checking personal or professional references through personal interviews with sources such as your former employers and associates, and other information sources. The investigative consumer report may contain information concerning your character, general reputation, personal characteristics, mode of living, or credit standing. You may request more information about the nature and scope of an investigative consumer report, if any, by contacting the Company.

*Ongoing Authorization:*

If the Company hires you or contracts for your services, the Company may obtain additional consumer reports and investigative consumer reports about you without asking for your authorization again, throughout your employment or your contract period, as allowed by law.

*Additional State Law Notices:*

Please see the "Additional State Law Notices" for California, Massachusetts, Minnesota, New Jersey, New York, and Washington that are provided below, as applicable. A California disclosure and summary of your rights under California Civil Code Section 1786.22, and a copy of New York Article 23-A, are being provided to you separately.

*Summary of Rights under the Fair Credit Reporting Act:*

A summary of your rights under the Fair Credit Reporting Act is being provided to you separately.

*San Francisco Fair Chance Ordinance Official Notice:*

A copy of the San Francisco Fair Chance Ordinance Official Notice is being provided to you separately.

*HireRight Privacy Policy:*

Information about HireRight's privacy practices is available at www.hireright.com/Privacy-Policy.aspx.

HireRight Sample Other Disclosures, Acknowledgements & Authorizations (May 2015)
(With Identifying Information)
Page 1 of 4

- 2 -

Doc. 1-1, Pl.'s Ex. 1, Discl. & Auth. Form.

Plaintiff, as will soon become apparent, maintains that the Disclosure and Authorization Form violates the FCRA. Defendants, by contrast, say that Plaintiff was provided with at least two additional background check disclosures, all of which complied with the FCRA. Doc. 49, Defs.' Mot. for Dismiss. Due to Lack of Art. III Standing or, in the Alternative, Mot. for J. on Pl. [hereinafter Defs.' Mot. to Dismiss] 3; Doc. 50, Defs.' App. Supp. Defs.' Mot. to Dismiss 1–2 [hereinafter Defs.' App.], Ex. A, Marshall Dyson Disclosure Forms. Nevertheless, Plaintiff signed the form when he applied. *See id.*; Doc. 1-1, Pl.'s Ex. 1, Discl. & Auth. Form.

About a week later, Defendants offered Plaintiff a job as a cook. Doc. 1, Pl.'s Compl. ¶¶ 39–40. The offer letter's last paragraph explained that the offer was "'contingent upon the successful completion of the pre-employment process including but not limited to background and employment checks.'" *Id.* ¶ 40 (quoting Doc. 1-1, Pl.'s Ex. 3, Offer Letter). Plaintiff accepted the position and signed the document. *Id.* ¶ 39. Defendants, in turn, procured a consumer report on Plaintiff on January, 1, 2016, and hired him shortly thereafter. *Id.* ¶ 41.

Plaintiff claims that, due to the Disclosure and Authorization's Form's non-compliance with the FCRA, Defendants obtained information about him that they had no legal right to obtain. *Id.* ¶ 42. Plaintiff further claims that Defendants did the same to thousands of their other employees. *Id.* ¶ 54. On that basis, Plaintiff filed his Complaint on behalf of himself and a putative class, asserting that Defendants violated the FCRA's stand-alone disclosure requirement. *Id.* ¶¶ 54–64 (citing 15 U.S.C. § 1681b(b)(2)). Plaintiff does not claim that he or the putative class suffered any actual damages, but seeks instead statutory damages, putative damages, costs, and attorneys' fees. *Id.* ¶ 64.

Defendants then moved to dismiss Plaintiff's Complaint under Federal Rule of Civil

Procedure 12(c), arguing that Plaintiff lacked standing to sue, or alternatively, that he failed to state a claim upon which relief could be granted. Doc. 49, Defs.' Mot. to Dismiss. Plaintiff responded to Defendants' Motion. Doc. 53, Pl.'s Resp. Opp'n Defs.' Mot. to Dismiss [hereinafter Pl.'s Resp.]. And Defendants replied. Doc. 56, Defs.' Reply in Further Supp. of Defs.' Mot. to Dismiss [hereinafter Defs.' Reply]. The Motion is therefore ripe for the Court's review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c); *see also* Fed. R. Civ. P. 7(a); 5C Charles Alan Wright et al., Federal Practice & Procedure § 1367 (internal footnotes omitted) ("Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and an answer (absent a court-ordered reply), unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply to a counterclaim, cross-claim, or third-party answer normally will mark the close of the pleadings."). The pleadings in this case are closed and Defendants timely filed their Motion. Thus, the Court may properly consider Defendants' Rule 12(c) challenge.

A motion for judgment on the pleadings "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Herbert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990). The standard for evaluating a Rule 12(c) motion is the same as the standard for evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Doe v. Myspace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). That holds true regardless of whether the Rule 12(c) motion

raises Article III standing or other merits arguments. *See Brown v. Livingston*, 524 F. App'x 111, 114 (5th Cir. 2013); *see also Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006) ("We may affirm a district court's Rule 12(b)(6) dismissal on any grounds supported by the record, including a party's lack of standing.").

The Court may look to "allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims." *Cox v. Cent. Insurex Agency, Inc.*, No. 3:11-cv-2267-B, 2012 WL 253882, at *2 (N.D. Tex. Jan 26, 2012) (citing *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

# III.

# ANALYSIS[1]

A.  *The FCRA's Stand-Alone Disclosure Requirement*

The FCRA provides that a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added); *see also LaFollette v. RoBal, Inc.*, No. 1:16-cv-2592-WSD, 2017 WL 1174020, at *2–3 (N.D. Ga. Mar. 30, 2017). Said more plainly, "[b]efore an employer may obtain an employee's consumer report to evaluate whether to retain that employee, [the] FCRA requires (1) a 'clear and conspicuous disclosure' that a consumer report may be obtained for employment purposes (2) that is provided 'in a document that consists solely of the disclosure.'" *Woods v. Caremark*, No. 4:15-cv-00535-SRB, 2016 WL 6908108, at *3 (W.D. Mo. July 28, 2016)

---

[1]The Court dismisses Plaintiff's suit based on Defendants' first theory that Plaintiff lacks Article III standing. Accordingly, the Court need not address Defendants' second argument that Plaintiff failed to state a claim under the FCRA.

(citing 15 U.S.C. §§ 1681a(h), 1681b(b)(2)(A)(i)).

Plaintiff's challenge here is not that Defendants failed to give him and other putative class members the proper disclosure. *See* Doc. 1, Pl.'s Compl. ¶ 21. Nor is it that Plaintiff did not authorize Defendants to procure a consumer report on him, or that he did not understand the nature of the authorization that he granted. *Id.* ¶¶ 39–41. Rather, Plaintiff asserts that Defendants violated the FCRA's requirement that employers provide their disclosures "in a document that consists solely of the disclosure" (*i.e.*, the stand-alone disclosure requirement). *Id.* ¶ 13 (citing 15 U.S.C. § 1681b(b)(2)(A)(i)). Specifically, Plaintiff says that Defendants violated the FCRA's stand-alone disclosure requirement because their Disclosure and Authorization Form combines the required disclosure and authorization with "extraneous information" such as an ongoing authorization clause, notices pertaining to state and municipal law, a summary of rights, and a legal disclaimer. *Id.* ¶¶ 22–37. As a result, Plaintiff maintains that he was deprived of information to which he had a statutory right. *Id.* ¶ 42. Put another way, Plaintiff maintains that receiving a non-stand-alone disclosure is the same as receiving no disclosure at all.

In essence, then, Plaintiff challenges the form of Defendants' disclosure, not its substance. *See id.* ¶¶ 43–44. That distinction is not lost on Plaintiff, who contests that form amounts to substance in this context. *Id.* ¶¶ 15–17.[2] Defendants disagree and argue that Plaintiff's claim should be dismissed for lack of Article III standing because the acts Plaintiff complains of don't amount to a concrete injury. Doc. 49, Defs.' Mot. to Dismiss 1.

---

[2]As addressed below, the Court disagrees on this point, which is the central issue in this dispute.

B.  *Article III Standing: Concrete Injury Requirement*

Article III of the Constitution limits federal-court jurisdiction to actual "Cases" and "Controversies." U.S. Const. art. III, § 2. Where a court lacks the constitutional power to adjudicate a case, it must dismiss it for lack of subject matter jurisdiction. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party invoking federal jurisdiction, not the party moving for dismissal, bears the burden of establishing subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *In re Eckstein Marine Serv.*, 672 F.3d 310, 314 (5th Cir. 2012).

"The justiciability doctrines of standing, mootness, political question, and ripeness all originate in Article III's case or controversy language." *Choice Inc. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (internal quotation marks omitted). For standing, a plaintiff must "demonstrate a 'personal stake' in the suit." *Camreta v. Greene*, 563 U.S. 692, 701 (2011) (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009)). To demonstrate such a personal stake a plaintiff must show: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that a favorable decision would redress the injury. *Lujan*, 504 U.S. at 560–61. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561.

That injury, however, "must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1147 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). Defendants assert that Plaintiff has not a pled a concrete injury in this case. Thus, Plaintiff's standing turns on whether he has sufficiently alleged that he suffered a concrete injury.

"A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). "An injury need not be tangible, but it cannot be merely abstract or hypothetical. 'The violation of a procedural right granted by statute *can* be sufficient in *some* circumstances to constitute an injury in fact.'" *Landrum v. Blackbird Ent., LLC*, 214 F. Supp. 3d 566, 570 (S.D. Tex. 2016) (quoting *id.* at 1549) (internal citations omitted). That said, a procedural violation alone is insufficient—the violation must impact some concrete interest to confer standing. *Id.*

C. *Plaintiff Did Not Suffer A Concrete Injury as the Result of Defendants' Disclosure and Authorization Form*

To recap,[3] the Complaint and the Authorization and Disclosure Form demonstrate that: (1) Defendants provided a disclosure to Plaintiff that a consumer report may be obtained for employment purposes before Defendants procured a report; and (2) Plaintiff authorized in writing the procurement of that report. Doc. 1, Pl.'s Compl. ¶¶ 20–21, 39–42; Doc. 1-1, Pl.'s Ex. 1, Discl. & Auth. Form; Doc. 1-1, Pl.'s Ex. 3, Offer Letter. Plaintiff does not contest that the Disclosure and Authorization Form was misleading or confusing, that he was unaware that a consumer report was being requested, or that Defendants used the consumer report inappropriately.[4] Doc. 1, Pl.'s Compl. ¶¶ 21, 39–41. Instead, Plaintiff asserts that Defendants' inclusion of "extraneous information" violated the FCRA's stand-alone disclosure requirement. *Id.* ¶¶ 13, 22–37.

---

[3]The structure of this recap is borrowed from *LaFollette*, 2017 WL 1174020, at *3. The underlying facts, however, are gathered from the pleadings.

[4]To the extent that Plaintiff argues that Defendants' inclusion of an "ongoing authorization" clause is inappropriate, the Court is unpersuaded. *See* Doc. 1, Pl.'s Compl. ¶¶ 24, 30–31. The presence of an ongoing authorization clause does not change the Court's approach here. *See Woods*, 2016 WL 6908108, at *1–5 (concluding plaintiff lacked standing when he alleged that employer's disclosure form violated FCRA's stand-alone disclosure requirement for, among other reasons, including an ongoing authorization clause).

So "[t]he question here is whether Plaintiff has Article III standing to pursue [his] claim that Defendant[s] violated the FCRA's stand-alone disclosure requirement. *LaFollette*, 2017 WL 1174020, at *3. Plaintiff alleges that he has standing for two reasons: (1) Defendants deprived him of information to which he had a statutory right, thereby inflicting upon him an informational injury; and (2) Defendants obtained information about Plaintiff to which they had no legal right, thereby invading Plaintiff's privacy. *See* Doc. 1, Pl.'s Compl. ¶ 42; Doc. 53, Pl.'s Resp. 12–22. The Court addresses each point in turn.

1. <u>Informational Injury</u>

"The Supreme Court has held that a 'plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.'" *LaFollette*, 2017 WL 1174020, at *4 (quoting *Fed. Elec. Comm'n v. Akins*, 524 U.S. 11, 21 (1998)). Plaintiff maintains that the he suffered such an informational injury because Defendants' failure to provide a stand-alone disclosure (*i.e.*, use of the Disclosure and Authorization Form) "deprived [him] of information *in the form and format* to which [he] was entitled" under the FCRA. Doc. 53, Pl.'s Resp. 17 (emphasis added). In other words, Plaintiff argues that failing to present information in the correct form is the same as failing to present it altogether.

The Court disagrees, and in so doing embraces the Southern District of Texas's recent rationale rejecting a plaintiff's argument that his employer's failure to comply with the FCRA's stand-alone disclosure requirement constituted an informational injury:

> Whether a violation of a statutorily created right confers standing turns on whether the right is substantive or merely procedural. *Black's Law Dictionary* defines a "procedural right" as "[a] right that derives from legal or administrative procedure; a right that *helps in the protection or enforcement* of a substantive right. *Cf.* substantive right." (10th ed. 2014) (emphasis added). A "substantive right," on the other hand,

is "[a] right that can be protected or enforced by law; a right of substance rather than form." *Id.* To the extent that a violation of the procedural right has no effect on the substantive right, the bare procedural violation does not cause an injury of the sort that, alone, would support standing. Confusion understandably arises when the procedure is closely intertwined with the substantive right.

In this case the procedure, a specified manner for disseminating information, protects the underlying right to receive that information. The distinction is a subtle one, and an analogy may prove helpful. Consider a hypothetical statute requiring building managers to notify occupants in the event of a fire in a timely manner via a loudspeaker using specific language. Now imagine that, during a fire, a manager effectively communicates a warning to an occupant in a timely manner but does so in person, after which the occupant escapes unharmed. The occupant was subjected to a bare, procedural violation. If, however, another occupant was never warned but smelled smoke and safely exited the building, the latter occupant was subject to a substantive violation of his right to be timely notified, albeit without independent, "tangible" harm. In the latter case, a statutory remedy would be appropriate. In the former case, only the manner in which the warning was to be delivered (i.e., the procedure) failed to meet statutory guidelines. The underlying right, the right to be timely notified in the event of a fire, was honored.

The FCRA protects a consumer's substantive right to be notified of the procurement and use of a consumer report for employment purposes. However, the requirement that the notice be in the form of a stand-alone disclosure is a procedural protection of that substantive right. Put yet another way, a statutory right to information is substantive. A statutory right to receive that information *in a particular format* is procedural.

*Landrum*, 214 F. Supp. 3d at 571.

In sum, the Southern District concluded, "a statutory right to information is substantive. A statutory right to receive that information *in a particular format* is procedural." *Id.* at 572. The Court agrees. Plaintiff nonetheless maintains that he suffered an informational injury, and argues that *Landrum* is distinguishable. Doc. 53, Pl.'s Resp. 17–22. The Court rejects both points.

For starters, the Court finds *Landrum*'s analysis directly applicable to Plaintiff's claim that he suffered an informational injury. Plaintiff points to three reasons why *Landrum* ought not control on this point; none are persuasive. First, Plaintiff says that he has properly alleged an informational

injury, whereas the plaintiff in *Landrum* did not. Doc. 53, Pl.'s Resp. 21. But that position misapprehends *Landrum*. There, the court acknowledged that informational injuries may be substantive, but explained that the plaintiff failed to allege such an injury because he attacked the form of the disclosure in question rather than its substantive adequacy to inform him that his employer intended to perform a background check. *Landrum*, 214 F. Supp. 3d at 571–72. As explained above, that's exactly the case here: Plaintiff does not contest that Defendants failed to provide him with a disclosure or that the disclosure was substantively inadequate; rather, he attacks the disclosure's format. So *Landrum*'s analysis is strikingly suitable.

Second, Plaintiff claims that the court in *Landrum* declined to consider the plaintiff's invasion of privacy argument. Doc. 53, Pl.'s Resp. 21. That's inaccurate—the court in *Landrum* concluded that it did not need to resolve "whether invasion of privacy following a procedural violation of the FCRA is a sufficiently concrete injury" because the plaintiff didn't adequately allege an invasion of privacy claim to begin with.[5] *Landrum*, 214 F. Supp. 3d at 572 ("This court does not need to decide that issue because Landrum has not alleged facts that would support an invasion-of-privacy claim."). In any event, it has no bearing on whether the Court should consider *Landrum*'s logic as to Plaintiff's informational injury argument.

Third, Plaintiff says the *Landrum* court's acknowledgment that the plaintiff had filed similar suits before somehow distinguishes it from this case. Doc. 53, Pl.'s Resp. 22. The Court, relying on language from *Landrum* itself, remains unmoved. *See Landrum*, 214 F. Supp. 2d at 572 (explaining

---

[5]As addressed below, that's a key distinction: the Court in *Landrum* held that the plaintiff did not allege facts to support standing based on invasion of privacy because he did not contest the that he gave such authorization or failed to understand the nature of the authorization he granted. *See* 214 F. Supp. 3d at 571–72.

that "Landrum's motive for applying for employment with Defendants *is not relevant to the court's jurisdictional analysis*") (emphasis added). For those reasons, the Court disregards Plaintiff's challenge to its reliance on *Landrum*.

Turning to the substance of Plaintiff's argument, the Court finds that much of the authority upon which Plaintiff relies to demonstrate that he has suffered an informational injury is inapposite. *See* Doc. 53, Pl.'s Resp. 18–19. In the cases cited to by Plaintiff, the plaintiffs alleged they did not receive the substantive information to which they were entitled.[6] *See also LaFollette*, 2017 WL 1174020, at *4 (distinguishing cases cited by Plaintiff on similar basis); *In re Michaels Stores*, 2017 WL 354023 at *6 (same). Again, Plaintiff makes no such allegation, and instead challenges only the form in which the information was presented. Doc. 53, Pl.'s Resp. 17 ("Defendants have deprived Plaintiff of information in the form and format to which Plaintiff was entitled.").

That said, Plaintiff does cite to a number of pertinent cases, relying primarily on *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623 (E.D. Va. 2016). *Id.* at 18. In *Thomas*, the court wholly embraced Plaintiff's theory and held that a consumer's receipt of a disclosure that did not comply with the FCRA's stand-alone requirement constituted a concrete informational injury. 193 F. Supp. 3d at 635. Thus, embracing *Thomas* means construing the FCRA's stand-alone disclosure requirement as substantive, rather than procedural.

The Court respectfully declines to do so and joins a number of courts disagreeing with

---

[6]In *Federal Election Commission v. Akins*, a group of voters alleged they had the right to information mandated by the Federal Election Campaign Act of 1971. 524 U.S. at 16. In *Public Citizen v. U.S. Department of Justice*, public interest groups alleged they had the right to information subject to disclosure under the Federal Advisory Committee Act. 491 U.S. 440, 449 (1989). In *Havens Realty Corporation v. Coleman*, testers received false information in violation of the Fair Housing Act. 455 U.S. 363, 372 (1982).

*Thomas. See, e.g.*, *Hopkins v. Staffing Network Holdings, LLC*, No. 16C7907, 2016 WL 6462095, at *3 (N.D. Ill. Oct. 18, 2016) ("respectfully disagree[ing] with the conclusions in *Thomas*"); *In re Michaels Stores*, 2017 WL 354023, at *7 ("I respectfully disagree with *Thomas*'s conclusion that the disclosure requirements set forth in §1681b(b)(2)(A)(i) are substantive rather than procedural."); *LaFollette*, 2017 WL 1174020, at *4 (embracing *In re Michael's Stores*); *see also*, *Landrum*, 214 F. Supp. 572 ("Put yet another way, a statutory right to information is substantive. A statutory right to receive that information *in a particular format* is procedural.").

In sum, Plaintiff does not allege that he did not receive a disclosure or that he failed to understand it, he just attacks the fact that it wasn't on its own sheet of paper. "'Where, as here, plaintiffs do not allege that they did not see the disclosure, or were distracted from it, the allegations amount to no more than a bare procedural violation of the stand-alone requirement.'" *LaFollette*, 2017 WL 1174020, at *4 (quoting *In re Michaels Stores*, 2017 WL 354023, at *9). Plaintiff's allegations therefore do not confer standing on an informational injury theory. *Id.*

2. Invasion of Privacy

Plaintiff next argues that Defendants invaded his privacy by obtaining a consumer report when they had no legal right to do so. Doc. 53, Pl.'s Resp. 12; *see also* Doc. 1, Pl.'s Compl. ¶ 42. And they had no legal right to do so because the Disclosure and Authorization form did not comply with the FCRA's stand-alone disclosure requirement. Doc. 53, Pl.'s Resp. 12

"Invasion of privacy is a widely recognized common law tort." *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 873 (W.D. Tex. 2016). Given the FCRA's history and purpose, "invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements." *Id.* The question, then, is what constitutes an invasion of privacy within the context

of the FCRA.

The District of New Jersey recently answered that question with regard to bare violations of the stand-alone disclosure requirement:

> Everyone agrees that an applicant would have standing under the FCRA if the employer simply obtained a credit report without telling the applicant, and without the applicant's consent. On the other hand, the applicant's consent, after being informed that the employer would be seeking such a report, vitiates any claim of a privacy violation. Either way, the issue hinges on whether the applicant received disclosure before consenting. The employer's procurement of a consumer report would not be unauthorized (and thus an invasion of privacy) unless the applicant was in fact denied disclosure. That Michaels did not comply with the stand-alone requirement, unless it resulted in a deprivation of disclosure, adds nothing. Plaintiffs' theory collapses on itself; without the addition of nondisclosure in fact, it is indistinguishable from a bare procedural violation.

*In re Michaels Stores*, 2017 WL 354023, at *10.

As referenced, Plaintiff alleges no in-fact deprivation of disclosure. Nor does he allege actual damages or injury as a result of Defendants having procured his credit report. *See* Doc. 1, Pl.'s Compl. ¶ 64. So his position boils down "to a contention that a violation of the stand-alone requirement automatically implies that the credit report is unauthorized. That principle, if accepted, 'would raise every technical violation of the FCRA to the realm of a major substantive harm.'" *In re Michaels Stores*, 2017 WL 354023, at *10 (quoting *Shoots v. iQor Holdings US Inc.*, No. 15-cv-563 (SRN/SER), 2016 WL 6090723, at *4 (D. Minn. Oct. 18, 2016)).

The Court finds that result illogical—to embrace such a principle would negate the entire procedural/substantive distinction. *See id.* As a result, the Court concludes that invasion of privacy within the context of the FCRA requires some additional showing of a substantive violation, such as a nin-fact deprivation of disclosure or provision of consumer reports to entities without reason to believe they have a permissible purpose for such reports. *See id.* at *10, *10 n.18; *Landrum*, 214 F.

Supp. at 572 (holding that plaintiff failed to allege facts sufficient to support standing based on invasion of privacy where he did not allege an in-fact deprivation of disclosure or that he failed to understand the nature of the disclosure that he was granting).

The Court notes that this conclusion is again at odds with *Thomas*, and again respectfully disagrees with its reasoning. *See Thomas*, 193 F. Supp. 3d at 636 ("Furthermore, where a defendant fails to comply with statutory prerequisites protecting the plaintiff's privacy, the plaintiff's privacy has been unlawfully invaded and he has suffered concrete injury, regardless of damages."); *see also In re Michaels Stores*, 2017 WL 354023, at *10 n.18 (collecting cases in alignment with *Thomas* and disagreeing with them). The Court further notes that this decision comports with *Perrill*. *See* 205 F. Supp. 3d at 874–75. The court in *Perrill* held that an employer's provision of consumer reports to a state comptroller without reason to believe that the comptroller had a permissible purpose under the FCRA constituted an invasion of privacy. *Id.* at 871–75.[7]

Were the Court faced with allegations of substantive violations of that nature today, it would hold similarly. But it is not. Plaintiff complains only of Defendants' failure to comply with the FCRA's stand-alone disclosure requirement. *See* Doc. 53, Pl.'s Resp. 12–16. Plaintiff does not allege that he never signed the authorization, that he didn't know what he was authorizing, or that he didn't read the authorization. *See id.*[8] So there was no invasion of privacy when Defendants did just what he

---

[7]The court in *Perrill* cites favorably to *Thomas*. 205 F. Supp. at 874. The Court construes that as going towards the ultimate legal conclusion that invasion of privacy in the context of the FCRA constitutes a concrete harm. The Court agrees on that point, but applies it to different result here. The reason for why that discrepancy does not put the Court's analysis here at odds with that in *Perrill* is simple: The factual allegations in *Perrill* amounted to an invasion of privacy because they involved a substantive violation, whereas the factual allegations here do not because they involve only procedural violations.

[8]Plaintiff does once again mention Defendants' ongoing authorization clause, but as addressed above, that does not change the Court's approach or otherwise factor in as a substantive violation. *See*

authorized them to do and procured his consumer report. *See LaFollette*, 2017 WL 1174020 at *5; *see also Landrum*, 214 F. Supp. at 572.

The violation Plaintiff alleges is purely procedural. *See LaFollette*, 2017 WL 1174020, at *5; *see also In re Michaels Stores*, 2017 WL 354023, at *11 ("Instead, [plaintiffs] argue only that [defendant's] acquisition of [p]laintiffs' consumer reports was unlawful because [defendant]'s disclosure did not comply with the FCRA, and was ipso facto an invasion of [p]laintiffs' right to privacy. This is precisely the type of bare procedural violation that is insufficient to confer standing.") (internal citations, alterations, and quotation marks omitted). For that reason, the Court concludes that Plaintiff failed to allege that he suffered an invasion of privacy. *See LaFollette*, 2017 WL 1174020, at *5; *see also Landrum*, 214 F. Supp. at 572.

In sum, Plaintiff, as the party invoking federal jurisdiction, bore the burden of establishing that the Court has subject matter jurisdiction over this case. *Lujan*, 504 U.S. at 561. Plaintiff has failed to demonstrate that he suffered an informational injury or an invasion of privacy. For that reason, he "has not met his burden of showing that he suffered an injury in fact." *Landrum*, 214 F. Supp. 3d at 572.

**IV.**

**CONCLUSION**

For the reasons discussed above, the Court concludes that Plaintiff suffered no concrete injury and therefore lacks standing. Thus, the Court lacks subject matter jurisdiction over this case. "Because the only named [p]laintiff lacks standing, the [C]ourt need not further address issues

---

*supra* note 4. Plaintiff read the authorization, understood it, then signed it. *See* Doc. 1, Compl. ¶¶ 20–21, 39–41; Doc. 1-1, Pl.'s Ex. 1, Discl. & Auth. Form; Doc. 1-1, Pl.'s Ex. 3, Offer Letter.

related to the class nature of this action." *Landrum*, 214 F. Supp. 3d at 573 (citing *Dallas Gay Alliance v. Dallas Cty. Hosp. Dist.*, 719 F. Supp. 1380, 1384–85 (N.D. Tex. 1989)). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Due to Lack of Article III Standing. Doc. 49. And so, the Court **DISMISSES without prejudice**[9] Plaintiff's claims against all Defendants.

    SO ORDERED.

    SIGNED: June 15, 2017.

                                              JANE J. BOYLE
                                              UNITED STATES DISTRICT JUDGE

---

[9] The Court's dismissal is "for lack of subject matter jurisdiction (standing); therefore, it is without prejudice." *Sepulvado v. La. Bd. of Pardons & Parole*, 114 F. App'x 620, 622 (5th Cir. 2004); *see also Alviar v. Lillard*, 854 F.3d 286, 292 (5th Cir. 2017) ("Because the court lacks subject matter jurisdiction over Lillard, the claims against Lillard must be dismissed without prejudice.").